UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION AT FRANKFORT
CIVIL ACTION NO. _____

*Electronically Filed*

SHARON MESSER and
JULIE GRAY, on behalf of
themselves and all others
similarly situated                                                    PLAINTIFFS

v.

QUALITY CARE FOR KIDS, LLC                                            DEFENDANT

> *Serve via Certified Mail:*
> Michelle Stivers
> Registered Agent for Service of Process
> 1034 Windsor Drive
> Shelbyville, Kentucky 40065

## COLLECTIVE-ACTION COMPLAINT

Plaintiffs Sharon Messer and Julie Gray, on behalf of themselves and all others similarly situated, submit this Collective-Action Complaint against Defendant Quality Care for Kids, LLC.

### Introduction

1. Messer and Gray, on behalf of themselves and all others similarly situated, bring this action against their former employer, Quality Care, to redress violations of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq*. Quality Care's violations of the FLSA have deprived Messer and Gray, as well as all others similarly situated, of wages to which they are entitled by law.

2. Messer, Gray, and the collective worked during work weeks without receiving minimum wages as required by 29 U.S.C. § 206(a).

3. This action is brought to recover unpaid minimum-wage compensation owed to Messer, Gray, and the collective.

4. Messer and Gray also complained to Quality Care about its failure to pay minimum wages, an activity the FLSA protects from retaliation. *See* 29 U.S.C. § 215(a)(3). Quality Care, however, terminated Messer and Gray because of their complaints.

5. This action is also brought, therefore, to recover compensation and other damages owed to Messer and Gray for their wrongful and retaliatory discharge.

## Parties, Jurisdiction, and Venue

6. Messer is, and at all times relevant to this action was, a citizen and resident of Barbourville, Knox County, Kentucky.

7. Gray is currently a citizen and resident of Tazewell, Claiborne County, Tennessee. At all other times relevant to this action, Gray was a citizen and resident of Harrogate, Claiborne County, Tennessee.

8. Quality Care is, and at all times relevant to this action was, a limited liability company organized under the laws of the Commonwealth of Kentucky, which conducted business in Shelbyville, Shelby County, Kentucky, and throughout the Commonwealth of Kentucky. Quality Care may be served via its registered agent for service of process, Michelle Stivers, at 1034 Windsor Drive, Shelbyville, Kentucky 40065.

9. Plaintiffs' claims for unpaid minimum wages are brought under the Fair Labor Standards Act, 29 U.S.C. § 206(a), and certification of a collective action for those claims is sought pursuant to 29 U.S.C. § 216(b).

10. Plaintiffs' claims for retaliation are brought under the Fair Labor Standards Act, 29 U.S.C. § 215(a)(3).

11. The Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1331.

12. The United States District Court for the Eastern District of Kentucky, Central Division at Frankfort, is the appropriate venue for this action pursuant to 28 U.S.C. § 1391(b) and Local Rule 3.1(a)(2)(A).

**Facts**

13. Quality Care provides vision and hearing testing for children throughout the Commonwealth of Kentucky, performing its testing services in elementary, middle, and high schools. Quality Care submits claims for payment to Medicaid and private insurance carriers, and earns in excess of $500,000.00 on an annual basis.

14. Upon information and belief, Quality Care employs more than a dozen vision and hearing technicians.

15. Quality Care hired Messer as a vision technician in August 2013 and terminated her employment on January 31, 2018.

16. Quality Care hired Gray as a hearing technician in August 2011 and terminated her employment on January 31, 2018.

17. Messer, along with all other similarly-situated vision technicians, and Gray, along with all other similarly situated hearing technicians, would set up the appropriate equipment at a participating school and provide the agreed-upon testing.

18. In 2017, Quality Care paid Messer at a rate of $15.00 per hour, and Messer worked 40 hours per week.

19. In 2017, Quality Care paid Gray at a rate of $16.00 per hour, and Gray worked 40 hours per week.

20. Quality Care began operations for the 2017-2018 school year on August 3, 2017.

21. In early September 2017, Quality Care notified its employees, including Messer, Gray, and the collective, that it would begin paying them biweekly on every other Friday, rather than weekly, the pay arrangement in years past.

22. Messer, Gray, and the collective began working on August 3, 2017. They were not paid any wages, however, until August 31, 2017.

23. The wages paid to Messer, Gray, and the collective on August 31, 2017, represented compensation for hours worked during the August 12, 2017, through August 25, 2017, pay period.

24. Messer, Gray, and the collective were not paid any wages for the August 3, 2017, through August 11, 2017, pay period, and thus denied payment of the required minimum wage.

25. For this August 3, 2017, through August 11, 2017, pay period, Messer worked 56 hours. At her regular rate of pay of $15.00 per hour, Messer should have been paid $840.00, less any applicable withholdings.

26. For this August 3, 2017, through August 11, 2017, pay period, Gray also worked 56 hours. At her regular rate of pay of $16.00 per hour, Gray should have been paid $896.00, less any applicable withholdings.

27. In August 2017, after not receiving any pay for the first pay period, Messer and Gray complained to Quality Care, but the company did nothing to address their complaints.

28. On or about December 21, 2017, Quality Care compounded its failure to pay minimum wages to Messer, Gray, and the collective for the August 3, 2017, through August 11, 2017, pay period by fraudulently presenting earnings statements, or paystubs, to Messer, Gray, and the collective, which purported to be a second paycheck for the same hours worked during the

December 2, 2017, through December 15, 2017, pay period – *i.e.*, a double wage payment to "make up" for Quality Care's failure to pay Messer, Gray, and the collective its minimum wages for the August 3, 2017, through August 11, 2017, pay period.

29. Messer was presented with three paystubs: one showing payment of $996.40 (wages for 80 hours of work during the December 2, 2017, through December 15, 2017, pay period, less applicable withholdings); a second showing another payment of $996.40 (alleged wages for yet another 80 hours of work during the December 2, 2017, through December 15, 2017, pay period, less applicable withholdings); and a third payment of $1,000, representing a bonus.

30. But only one of the $996.40 payments was directly deposited into Messer's checking account; the other was never directly deposited into any of Messer's bank accounts and she never received a live check.

31. Gray was also presented with three paystubs: one showing payment of $983.40 (wages for 80 hours of work during the December 2, 2017, through December 15, 2017, pay period, less applicable withholdings); a second showing another payment of $983.40 (alleged wages for yet another 80 hours of work during the December 2, 2017, through December 15, 2017, pay period, less applicable withholdings); and a third payment of $1,000, representing a bonus.

32. But only one of the $983.40 payments was directly deposited into Gray's checking account; the other was never directly deposited into any of Gray's bank accounts and she never received a live check.

33. Upon information and belief, Quality Care presented a fraudulent earning statement, or paystub, to the collective showing a double wage payment for the December 2, 2017, through December 15, 2017, pay period, but which was never directly deposited into their bank accounts and for which they never received a live check.

34. Not only did Quality Care fail to pay minimum wages to Messer, Gray, and the collective for hours worked in the August 3, 2017, through August 11, 2017, pay period, Quality Care later attempted, after Messer and Gray's complaints, to make Messer, Gray, and collective believe that it made up for failing to do so by presenting false or fraudulent paystubs to them.

35. On January 31, 2018, during a meeting held by Quality Care's owner, Michelle Stivers, attended by all or nearly all vision and hearing technicians, both Messer and Gray again complained about not being paid wages for the August 3, 2017, through August 11, 2017, pay period. Stivers immediately terminated each of them because of their repeated complaints.

## Collective-Action Allegations

36. Messer and Gray bring this action pursuant to 29 U.S.C. § 216(b) on their own behalf and on behalf of a collective of other persons similarly situated, defined as follows:

> All current and former vision and hearing technicians employed by Quality Care for Kids, LLC, in the Commonwealth of Kentucky who were not paid compensation for their work performed during the August 3, 2017, through August 11, 2017, pay period.

37. Questions of law and fact common among Messer, Gray, and the collective include, but are not limited to, the following:

    A. whether Messer, Gray, and the collective, whether they are currently or formerly employed, worked during the August 3, 2017, through August 11, 2017, pay period;

    B. whether Quality Care failed to pay Messer, Gray, and the collective minimum wages for the August 3, 2017, through August 11, 2017, pay period in violation of 29 U.S.C. § 206(a);

    C. whether Quality Care failed to maintain adequate and accurate records of all time employees spent working during the August 3, 2017, through August 11, 2017, pay period in violation of 29 U.S.C. § 211(c);

    D. whether Quality Care's failure to pay Messer, Gray, and the collective minimum wages for the August 3, 2017, through August 11, 2017, pay period was willful within the meaning of the Fair Labor Standards Act; and

    E. whether Quality Care's attempt to hide its failure to pay Messer, Gray, and the collective minimum wages for the August 3, 2017, through August 11, 2017, pay period by presenting false or fraudulent paystubs on or around December 21, 2017, was willful within the meaning of the Fair Labor Standards Act.

  38. There are potentially numerous other similarly-situated current and former employees of Quality Care who have been improperly compensated in violation of the FLSA and who would benefit from the issuance of a Court-approved or Court-supervised notice of this collective action and given the opportunity to join this collective action pursuant to 29 U.S.C. § 216(b).

  39. Messer, Gray, and each member of the collective they seek to represent are similarly situated: they formerly were or currently are employed by Quality Care as vision or hearing technicians who worked during the August 3, 2017, through August 11, 2017, pay period; they performed or currently perform the same or substantially similar duties; they reported or currently report to the same supervisor(s); they were or currently are paid the same or a substantially similar amount of money on an hourly basis; they regularly worked or currently work approximately forty hours per week; they were not paid a minimum wage for the August 3, 2017, through August 11, 2017, pay period for their hours worked.

  40. Messer and Gray will fairly and adequately represent and protect the interests of the collective.

41. Messer and Gray have retained competent counsel experienced with labor and employment matters, with matters arising under the Fair Labor Standards Act, and with class- and collective-action litigation.

42. The names and addresses of the members of the collective are readily available from Quality Care through records that normally are or should be maintained during the ordinary course of business.

## Count I:
## Violation of the Fair Labor Standards Act, 29 U.S.C. § 206(a)

43. Messer and Gray were both an "employee" as defined by the FLSA. 29 U.S.C. § 203(e)(1).

44. Each member of the collective—persons currently or formerly employed by Quality Care as vision and hearing technicians who worked during the August 3, 2017, through August 11, 2017, pay period—is or was an "employee" as defined by the FLSA. *Id*.

45. Quality Care is an "employer" as defined by the FLSA. *Id*. at 203(d).

46. At all times relevant to this action, Quality Care has had annual gross operating revenues in excess of $500,000.00.

47. Quality Care was required to pay Messer, Gray, and the collective no less than minimum wages during each work week.

48. By failing to pay Messer, Gray, and the collective minimum wages for the August 3, 2017, through August 11, 2017, pay period, Quality Care has willfully, knowingly, intentionally, and/or recklessly violated the FLSA, 29 U.S.C. § 206(a).

49. Quality Care has made no good-faith effort to comply with the FLSA. Instead, through subterfuge and misdirection, Quality Care attempted to deceive Messer, Gray, and the collective by presenting false or fraudulent paystubs showing an alleged double-wage payment on

or about December 21, 2017, designed to cover up its failure to pay minimum wages for the August 3, 2017, through August 11, 2017, pay period.

50. As a result of Quality Care's violations and unlawful acts, Messer, Gray, and the collective have suffered damages, including, but not limited to, unpaid minimum wages in an amount to be determined at trial. Messer, Gray, and the collective are also entitled to recover injunctive relief, liquidated damages, pre-judgment interest, and attorney's fees, costs, and expenses.

### Count II:
### Violation of the Fair Labor Standards Act, 29 U.S.C. § 215(a)(3)

51. The FLSA prohibits "any person" from "discharg[ing] or in any other manner discriminat[ing] against any employee because such employee has filed any complaint . . . under or related to this Act[.]" 29 U.S.C. § 215(a)(3).

52. Messer and Gray were both an "employee" as defined by the FLSA.

53. Quality Care is an "employer" as defined by the FLSA.

54. At all times relevant to this action, Quality Care has had annual gross operating revenues in excess of $500,000.00.

55. Messer repeatedly complained to Quality Care about not being paid minimum wages for the August 3, 2017, through August 11, 2017, pay period, an activity protected by the FLSA.

56. Gray repeatedly complained to Quality Care about not being paid minimum wages for the August 3, 2017, through August 11, 2017, pay period, an activity protected by the FLSA.

57. On or about January 31, 2018, Messer and Gray again complained to Quality Care about not being paid minimum wages for the August 3, 2017, through August 11, 2017, pay period.

58. On or about January 31, 2018, immediately after again complaining about Quality Care's failure to pay their minimum wages, Quality Care terminated Messer and Gray because of their complaints.

59. As a result of Quality Care's violations and unlawful acts, Messer and Gray have suffered damages, including, but not limited to, lost wages and benefits and emotional distress, mental anguish, humiliation, and embarrassment. Messer and Gray are also entitled to recover front pay, pre-judgment interest, and attorney's fees, costs, and expenses.

### Prayer for Relief

Wherefore, Plaintiffs Sharon Messer and Julie Gray, individually and on behalf of a collective of other similarly-situated current and former employees of Defendant Quality Care for Kids, LLC, pray that the Court award them, and/or the collective, the following relief:

A. trial by jury;

B. for a declaration that the compensation practices complained of in this Collective-Action Complaint are and were unlawful;

C. for judgment in favor of Messer, Gray, and the collective on all claims asserted in this Collective-Action Complaint;

D. for designation of this action as a collective action on behalf of the collective, those similarly-situated current and former vision and hearing technicians employed by Quality Care;

E. for designation of Messer and Gray as the collective's named representatives;

F. for designation of undersigned counsel as the collective's counsel;

G. for issuance, at the earliest possible time, of notice to the members of the collective, apprising them of their rights to opt in to this action and permitting them to assert timely claims for unpaid minimum wages;

H.       for the equitable tolling of the statute of limitations from the date of filing of this Collective-Action Complaint until the expiration of the deadline for filing consent-to-sue forms pursuant to 29 U.S.C. § 216(b);

I.        for injunctive relief against Quality Care from continuing to engage in the unlawful compensation practices set forth in this Collective-Action Complaint;

J.        for an award of compensatory damages and equitable relief, including, but not limited to, back pay; lost wages and benefits; front pay; emotional distress, mental anguish, humiliation, and embarrassment; liquidated damages; and pre-judgment interest;

K.       for an appropriate incentive award for acting as named plaintiffs and collective representatives in this action, and for pursuing this action on behalf of the collective;

L.       for an award of attorney's fees, costs, and expenses incurred in prosecuting this action; and

M.       any and all other relief to which Messer, Gray, and the collective may be entitled.

Respectfully submitted,

**/s/ Matthew T. Lockaby**
Matthew T. Lockaby
Lockaby PLLC
1795 Alysheba Way, Suite 4207
Lexington, Kentucky 40509
Tele:   859.263.7884
Fax:    844.270.3044
Email: mlockaby@lockabylaw.com

*Counsel for Plaintiffs, Sharon Messer and Julie Gray*